IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 08 CR 1061 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| MICHAEL REESE | ) | |

## MEMORANDUM OPINION AND ORDER

On September 15, 2009, a jury convicted Defendant Michael Reese ("Reese") of conspiracy to commit bribery in violation of 18 U.S.C. § 371 (Count One), and making false statements to federal agents in violation of 18 U.S.C. § 1001(a)(2) (Counts Two and Three). Reese now moves for a judgment of acquittal or alternatively, a new trial. For the reasons stated, Reese's Motion for Judgment of Acquittal or a New Trial is denied.

## BACKGROUND

Reese was a supervising building inspector in the City of Chicago Department of Buildings. In December 2008, Reese was indicted for conspiring with David Johnson ("Johnson"), another building inspector, Sorin Adrian Oros ("Oros"), a contractor and developer in Chicago, and others, to accept money from Oros and others, in exchange for issuing certificates of occupancy, expediting approvals on properties undergoing renovations and abating code violations.

At trial, Reese claimed that he was not involved in the bribes between Johnson and Oros, and the fact that he happened to work near them and know them did not mean that he was a participant in their illegal activity. During trial, the Government presented a number of witnesses and exhibits to demonstrate that Reese had been involved in a conspiracy to accept bribes in exchange for his assistance with building projects. First, Johnson testified that Oros paid him and Reese multiple

1

times to make changes in the Department of Buildings' mainframe computer which stored the different zoning ordinances' requirements. Next, Oros testified that he paid Reese in exchange for changing information in the City's computer in order to facilitate the City's approvals of his renovation projects. Oros also testified that Reese referred him to Johnson to make the necessary mainframe changes after Reese lost access to the City's database. The Government also presented the testimony of Catherine Romasanta ("Romasanta"), a former expediter. Romasanta testified that she first met Reese when she worked for M3 Plumbing, a company owned by Benny Garneata ("Garneata"), a contractor. Romasanta paid Reese bribes in exchange for favorable treatment on City building and inspection related issues. One such bribe occurred in 2006, and was given for the purpose of obtaining an easy permit for a porch construction project. Reese obtained the easy permit for Romasanta with Johnson's assistance. Romasanta also testified that as part of her responsibilities when she worked for Garneata, she distributed gift cards to City officials during the Christmas season. The gift cards were distributed as gratuities to ensure continued favorable treatment. On one occasion, Romasanta delivered a gift card to Reese on Garneata's behalf. In 2005, around Christmas time, Romasanta received a telephone call from Reese, wherein he asked her whether he would be receiving anything from Garneata that year.

After deliberating, the jury found Reese guilty of conspiracy to commit bribery, in violation of 18 U.S.C. 371, and making false statements to federal agents, in violation of 18 U.S.C. 1001(a)(2). Reese now seeks a judgment of acquittal or a new trial under Fed. R. Civ. P. 29(c) and 33, claiming: 1) insufficient evidence to support the jury's verdict; 2) the Court erred when it allowed the Government to introduce the "2005-Gift Card list" (Gov. Ex. 26) during Romasanta's testimony; 3) the Court erred when it admitted testimony regarding pre-2005 acts of bribery

2

involving Reese and Johnson; and 4) the Court erred when it denied Reese's objections to proposed

jury instructions. Reese also asserts that his right to a fair trial was impinged by the Government's

late production of phone records, which denied defense counsel sufficient time to adequately

respond to the Government's evidence.

### DISCUSSION

**I.      Motion for Judgment of Acquittal**

A motion for judgment of acquittal under Rule 29 challenges the sufficiency of the evidence

against the defendant. *See* Fed. R. Crim. P. 29. Such a motion should be denied if, after viewing

the evidence in the light most favorable to the prosecution, "any rational trier of fact could have

found the essential elements of the crime beyond a reasonable doubt." *United States v. Hicks*, 368

F.3d 801, 804 (7th Cir. 2004). A conviction should not be overturned unless "the record is devoid

of evidence from which a reasonable jury could find guilt beyond a reasonable doubt." *United*

*States v. Curtis*, 324 F.3d 501, 505 (7th Cir. 2003) (citing *United States v. Menting*, 166 F.3d 923,

928 (7th Cir. 1999)).

The Court now turns to the evidence presented for each charge against Reese.

**A.      Count I - Conspiracy to Commit Bribery**

Count I of the Indictment alleged that Reese conspired with Johnson, Oros, and others known

and unknown to the Grand Jury, to accept money from Oros and others, said money being given and

accepted with the intent to influence and reward Reese and Johnson in connection with any business,

transaction, and series of transactions of the City involving things of value of $5,000 or more,

namely, issuing certificates of occupancy, expediting approvals on properties undergoing

renovations, and abating code violations in violation of Title 18, United States Code, Section 666(a),

all in violation of Title 18, United States Code, Section 371. To sustain a conviction for conspiracy to commit bribery under 18 U.S.C. § 371, the Government was required to prove beyond a reasonable doubt that Reese agreed with at least one other individual to commit an unlawful act-- here, to accept money in exchange for issuing certificates of occupancy, expediting approvals on properties undergoing renovations and abating code violations, and that Reese knowingly and intentionally joined the agreement. *See United States v. Anderson*, 580 F.3d 639, 646 (7th Cir. 2009); *United States v. Oros*, 578 F.3d 703, 710 (7 th Cir. 2009). However, the agreement need not be formal and the government may establish it through circumstantial evidence. *See United States v. Corson*, 579 F.3d 804, 811 (7th Cir. 2009); *see also United States v. Gilmer*, 534 F.3d 696, 701 (7th Cir. 2008) (government must prove either an implicit or explicit understanding to work together to commit the offense).

Reese contends that the Government did not satisfy its burden of proving him guilty of conspiracy to commit bribery because it failed to prove the existence of a single conspiracy that Reese knew of and agreed to join.

Here, contrary to Reese's contention, the record demonstrates that the evidence presented at trial was sufficient for the jury to find Reese guilty of conspiracy to commit bribery beyond a reasonable doubt. There was ample evidence to support the jury's finding that Reese agreed with Johnson, Oros and others to accept money, knowing that said money was being given to influence him in connection with business transactions involving the City of Chicago. Johnson testified that Oros paid him and Reese multiple times to get building plans approved and to manipulate the Department of Buildings' mainframe computer which stored the different zoning ordinances' requirements. Specifically, Johnson testified that in the spring of 2005, Reese approached him and

asked if he knew anyone who had the ability to alter the number of units in a building as reflected in the Buildings Department mainframe computer database and when Johnson indicated that he did know someone, Reese referred Oros to Johnson. Johnson testified that Oros then began calling him for unit changes and that after he effectuated the change, Oros would pay him and Reese $1500; he would keep $500 and Reese would keep $1000. Later in their relationship, Johnson would effectuate the unit changes for Oros directly in exchange for $1000. Oros' testimony corroborated Johnson's. Oros testified that in 2003 or 2004, he frequently paid Reese $1000 to alter the number of units listed in a property on the City's mainframe computer; however, at some point Reese informed him that he no longer had access to the City's computer so Reese referred Oros to Johnson.

Duane Antoine ("Antoine") testified that on October 20, 2005, he went to the City of Chicago Buildings Department to rectify code violations appearing on a property he owned. The next day, Antoine met with Reese and explained that he needed the violations lifted within ten days. Upon hearing this, Reese summoned Johnson and then left the room while Johnson told Antoine he could get the violations lifted in exchange for $4000. Romasanta testified that in early spring 2006, she paid Reese and Johnson $1500 to obtain an easy permit for a porch renovation project on the west side of Chicago. Romasanta's testimony was corroborated by the approved easy permit and phone records showing the attempted contacts between Romasanta and Johnson and the calls between Romasanta and Reese. The Government also presented phone records showing the numerous telephone calls made between Oros, Reese and Johnson during the time period of the charged conspiracy–early 2005 through December 13, 2006.

All of this evidence demonstrated Reese's intent to accept money, knowing that said money

was being given to influence and reward him in connection with business transactions involving the City of Chicago and an agreement among himself, Johnson, Oros and others to do so. Accordingly, a rational jury could have found Reese guilty of conspiracy to commit bribery beyond a reasonable doubt. Because the Government introduced sufficient evidence to satisfy the elements of the charged offense, Reese is not entitled to a judgment of acquittal with respect to Count I of the Indictment.

**B.      Counts II and III - Knowingly Making False Statements to Federal Agents**

Counts II and III of the Indictment alleged that Reese knowingly made false statements to federal agents in violation of 18 U.S.C. § 1001(a)(2). The jury convicted Reese of both counts, finding that he made a false statement to agents from the United States Postal Inspection Service during interviews on May 3, 2007 and May 7, 2007. To prove a violation of 18 U.S.C. §1001(a)(2), the Government was required to prove that Reese's statements were false; material; knowingly and willfully made; and concerned a matter within the jurisdiction of a federal department or agency– here, the Postal Inspector. *See United States v. Turner*, 551 F.3d 657, 662 (7th Cir. 2008). Reese claims that there was insufficient evidence to establish that Reese made the statements, that the statements were false or that the statements were material to the investigation. (R. 63, at ¶ 4.)

Here, the record demonstrates that the evidence presented at trial was sufficient for the jury to find Reese guilty of making false statements beyond a reasonable doubt. The Postal Inspectors testified that Reese, when interviewed on May 3, 2007, stated that Oros never asked him for anything except advice and that Oros never asked him to change unit numbers on a property in exchange for money. Oros then took the stand and admitted that he frequently gave Reese money in exchange for his manipulation of the unit numbers on the City's mainframe computer. Similarly,

the Postal Inspectors testified that Reese, when interviewed on May 7, 2007, stated that he had never referred individuals to Johnson who were interested in obtaining building permits and that he never referred an individual named "Danny" to Johnson, in order for Danny to obtain a building permit. The Government then introduced tape recorded conversations between Reese and Danny where Reese refers Danny to Johnson for the express purpose of obtaining a building permit. This evidence is sufficient to establish that Reese made the statements and that the statements were false.

With respect to materiality, to be material for purposes of § 1001, a statement "must have a natural tendency to influence, or [be] capable of influencing, the decision of the decisionmaking body to which it was addressed." *United States v. Gaudin*, 515 U.S. 506, 509 (1995) (internal quotations omitted). However, "[u]nder section 1001 a false statement may be material even though the agency did not rely on it and was not influenced by it." *Turner*, 551 F.3d at 663 (quoting *United States v. Dick*, 744 F.2d 546, 553 (7th Cir. 1984)). Here, Reese's statements to the Postal Inspectors were aimed at misdirecting the agents, and this is enough to satisfy the materiality requirement of § 1001. *See Turner*, 551 F.3d at 664.

Because the Government introduced sufficient evidence to prove that Reese made material false statements to federal agents, Reese is not entitled to a judgment of acquittal with respect to Counts II and III of the Indictment.

## II.    Motion for New Trial

A motion for a new trial under Rule 33(a) should be granted only if required "by the interests of justice." Fed. R. Crim. P. 33(a). Such a motion should be granted sparingly and is only appropriate if "substantial rights of the defendant have been jeopardized by errors or omissions

during trial." *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989). A defendant is entitled

to a new trial if there is a reasonable possibility that a trial error had a prejudicial effect upon the

jury's verdict. *See United States v. Berry*, 92 F.3d 597, 600 (7th Cir. 1996). In support of his

Motion for a New Trial, Reese claims that the Court erred when it: 1) allowed the Government to

introduce the "2005-Gift Card list" (Gov. Ex. 26) during Romasanta's testimony, 2) admitted

testimony regarding pre-2005 acts of bribery involving Reese and Johnson, and 3) denied Reese's

objections to proposed jury instructions. Reese also asserts that his right to a fair trial was impinged

by the Government's late production of phone records, which denied defense counsel sufficient time

to adequately respond to the Government's evidence.

### A.     The 2005-Gift Card List

Reese asserts that the Government's introduction of the 2005-Gift Card List, Government

Exhibit 26, through the testimony of Romasanta, violated his Sixth Amendment right to

confrontation because Garneata, the individual who prepared the list, did not testify. The list at issue

is a handwritten list entitled "2005-Gift Cards," which contained a series of names of City officials.

Next to each name was a dollar amount and next to almost every dollar amount was the notation

"Done" and a checkmark. One line on the list read, "Insp. Reese–$200–Done." After requiring the

Government to redact the "Done" notations and the checkmarks, the Court admitted the 2005 list

as a business record exception to the hearsay rule.

Under Federal Rule of Evidence 803(6), the following *is not* excluded by the hearsay rule:

> A memorandum, report, [or] record . . . made at or near the time by,
> or from information transmitted by, a person with knowledge, if kept
> in the course of a regularly conducted business activity, and if it was
> the regular practice of that business activity to make the [record] . .
> . all as shown by the testimony of a custodian or other qualified
> witness . . . .

Fed. R. Evid. 803(6). Here, the 2005 gift card list was authenticated by Steven Lille ("Lille"), one of Garneata's employees, who testified that he found the list on a legal pad in M3 Plumbing's office in the summer of 2007, and that he took the list with him when he left Garneata's employ on October 19, 2007. Prior to the ruling on the admissibility of the list, the Court permitted defense counsel to voir dire Romasanta, outside the presence of the jury, to ascertain whether she could lay a proper foundation to admit the list as a business record. During the voir dire, and while subsequently testifying before the jury, Romasanta stated that every year Garneata would make a list containing the names of supervisors in city buildings and zoning departments. She had been familiar with this practice since 2002 and began comparing lists with Garneata in 2003. Garneata would ask Romasanta to distribute gift cards to some of the individuals named on the list. Romasanta testified that the gift cards would be distributed in exchange for continued favorable treatment from the supervisors. One year, Romasanta delivered a gift card to Reese on Garneata's behalf and another year Reese called her and asked if Garneata was doing anything for the inspectors that Christmas. Romasanta was familiar with the names on the 2005 list based upon the fact that the names were nearly identical to or at least similar to the names on the list that she prepared and worked off of to pass gift cards along to individuals for Garneata. The individuals on the 2005 list were individuals that she knew and could identify as being within the City's Building Department. Moreover, Romasanta testified that she may have referred to this particular list–the 2005 gift card list– in the past. Lastly, both Lille and Romasanta identified the handwriting on the list as that of Garneata's, which they testified they had seen on multiple occasions.

After hearing Romasanta's proffer and her testimony before the jury, the Court admitted the 2005 gift card list as a business record. And, prior to admitting the list into evidence, the Court

required the Government to redact the "Done" notations and the checkmarks next to the names. Accordingly, the Court did not err when it allowed the Government to introduce the 2005-Gift Card list as a business record during Romasanta's testimony.

## B.    Evidence of Pre-2005 Acts of Bribery

During the trial, the Court admitted evidence of pre-2005 acts of bribery involving Reese and Johnson and additional acts of bribery involving Reese and Romasanta. Reese claims that the Court should have excluded this evidence because it was not admissible under Fed. R. Evid. 404(b) and was not intricately intertwined with the charged conspiracy.

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." Fed. R. Evid. 404(b). Nonetheless, evidence of other acts is admissible to complete the story of a charged offense, explain the circumstances surrounding a charged offense or show the relationship of trust and cooperation that existed between coconspirators. *See United States v. Wantuch*, 525 F.3d 505, 518 (7th Cir. 2008) (affirming district court's admission of prior acts because the evidence "outlined how the relationship of rust and cooperation between [coconspirators] was born, developed and eventually led to their respective roles in the conspiracy."). Evidence of other acts that are inextricably intertwined with the events surrounding the charged crime is not evidence of "other acts" within the meaning of Rule 404(b). *See United States v. Ramirez*, 45 F.3d 1096, 1102 (7th Cir. 1995); *United States v. Roberts*, 933 F.2d 517, 520 (7th cir. 1991) (citing *United States v. Towne*, 870 F.2d 880, 886 (2d Cir. 1989)). A prior act is inextricably intertwined with the charged conduct if the act tends to prove an element of the

10

charged offense.  *See United States v. Ojomo*, 332 F.3d 485, 489 (7th Cir. 2003).  Such inextricably intertwined evidence is admissible unless the evidence's probative value is substantially outweighed by the danger of unfair prejudice.  *See* Fed. R. Evid. 403; *Wantuch*, 525 F.3d at 517.

Here, the evidence of pre-2005 acts of bribery between Reese and Johnson and Reese and Romasanta showed how the relationship developed between these individuals.  The evidence indicated that Reese and Johnson started off as mere coworkers but developed the type of relationship that allowed them to trust each other and refer developers willing to pay bribes for official action to each other.  Additionally, with respect to Romasanta, the evidence explained why Reese would accept payments from her and the trust they had in each other to participate in the conspiracy.  Furthermore, although some of the acts occurred outside of the applicable limitations period, the evidence is highly probative of the relationship between Johnson and Reese and Reese's intent to accept bribes.  Accordingly, the danger of unfair prejudice did not substantially outweigh the probative value of the evidence.  Therefore, the Court did not err when it admitted testimony concerning the pre-2005 acts of bribery involving Reese and Johnson and Reese and Romasanta.

### C.     Jury Instructions

Reese claims, without case law or citations to the record, that the Court erred in denying his objections to proposed jury instructions.  However, Reese offers no specifics as to what objections or jury instructions he is referring to and no argument whatsoever as to how his substantial rights may have been violated by the Court's purported errors.  Accordingly, Reese is not entitled to a new trial on this ground.  *See United States v. Jones*, 224 F.3d 621, 626 (7th Cir. 2000) (lack of development of an argument and absence of supporting case law "speaks to the paucity of the argument" and arguments that are not adequately developed or supported are waived).

**D.      Government's Production of Phone Records**

Finally, Reese asserts that his right to a fair trial was impinged by the Government's late production of phone records. Specifically, Reese contends that the Government's late production of phone records afforded him insufficient time to adequately respond to the Government's evidence. A review of the record, however, reveals that the Court gave Reese adequate time to review the Government's evidence. On Monday, September 14, 2009, the Government sought to introduce Government Group Exhibit 33A, a summary chart reflecting, among other things, phone records it received from T-Mobile pursuant to a trial subpoena. The Government received the T-Mobile records on Friday, September 11, 2009, and turned them over to defense counsel the same day. When the Government sought to introduce Group Exhibit 33A, defense counsel stated that she had not had an opportunity to go through the phone records or to check them against the Government's exhibit. At that time, the Court asked defense counsel if she would like some time to review them. Defense counsel responded that she would like additional time and that an hour should be sufficient. The Court then took a recess and upon returning asked defense counsel if she had had a sufficient opportunity to review the phone records. Defense counsel expressly acknowledged that she had and that she was ready to proceed. Therefore, Reese is not entitled to a new trial based on the Government's production of phone records, which Reese acknowledged he had ample opportunity to review.

## CONCLUSION AND ORDER

For the reasons stated, Reese's Motion for Judgment of Acquittal or a New Trial is denied.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: January 4, 2010